UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MANUEL MERAZ, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Case No. 05 C 1094 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| MICHAEL COMFORT, District Director, | ) | |
| United States Citizenship and Immigration Services | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Manuel Meraz ("Meraz") sued the United States Citizenship and Immigration Services ("USCIS"), an agency of the Department of Homeland Security,[1] under 8 U.S.C. § 1447(b) which allows a naturalization applicant to file suit in the district court if the USCIS fails to decide the application within 120 days after an examination has conducted. After Meraz filed suit in this court, the USCIS purported to deny Meraz's naturalization application and then commenced removal proceedings against him. The USCIS has moved to dismiss this case because the pending removal proceedings have stripped this court of jurisdiction and because the court cannot grant meaningful relief while the removal proceedings are pending. The motion to dismiss is denied.

---

[1] Naturalization applications were formerly considered by the Immigration and Naturalization Service ("INS"). On March 1, 2003, the INS's functions were transferred to the Department of Homeland Security. Pub. L. No. 107-296 (2002). The United States Citizenship and Immigration Services within the Department of Homeland Security now has the duties of the INS.

1

**I.     Background**

Meraz was born in Mexico and is a citizen of Mexico.[2]  When he was sixteen years old, he came to the United States to help support his family.  Three years later, in 1979, Meraz married a United States citizen and was granted lawful permanent resident status on April 16, 1981.  Meraz has three children who are U.S. citizens, having been born in Chicago.  In 1985, Meraz bought a grocery store, which specializes in Mexican foods, and he now owns two supermarket/restaurants which together employ 24 people.

During his over 25 years in the United States, Meraz has had one incident with the law.  In 1985, he shot and wounded a person who was robbing his grocery store.  He was convicted of aggravated battery and sentenced to two years' probation.  This incident represents Meraz's only arrest and conviction.

As part of his business, Meraz travels to Mexico several times a year to purchase products for his stores.  Although he made these trips for years without incident, on December 9, 2002, Meraz was detained by the U.S. Immigration and Naturalization Service (INS).  The INS confiscated his Resident Alien Card and served upon him a Notice to Appear for Removal Proceedings, charging him with being inadmissible under the Immigration and Nationality Act because of his 1985 conviction.[3]  The INS ultimately released Meraz from custody and never

---

[2] These facts are largely derived from Meraz's opposition to the motion to dismiss, and the court will consider them as true for the purposes of deciding the motion to dismiss.

[3] Specifically, 8 U.S.C. § 1227(a)(2)(A)(i) states: "Any alien who- (I) is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission, and (II) is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable."  In responding to the motion to dismiss, Meraz does not dispute that this provision applies to his 1985 conviction.  Presumably, Meraz's date of admission is April 16, 1981 when he was admitted as a permanent resident, although he resided in the United States for

2

filed the Notice to Appear with the immigration court to commence removal proceedings.

Because Meraz needed his Resident Alien Card to travel to Mexico for business and to visit family, he applied for naturalization on November 13, 2003. He was interviewed on September 20, 2004; at this interview he passed the English and U.S. history and government tests but was informed that a decision could not yet be made about his application. On that same day, Meraz's attorney sent a letter to the USCIS district counsel with evidence of good moral character in the form of letters and affidavits from friends, relatives, and business associates.

On February 23, 2005, more than 120 days after the naturalization interview, Meraz filed suit in this court. On March 30, 2005, the USCIS purported to deny his application because of Meraz's 1985 conviction. The USCIS found that the 1985 conviction, which rendered Meraz deportable, showed a lack of good moral character and was grounds for denying his naturalization application.

On April 15, 2005, the USCIS served a Notice to Appear for Removal Proceedings on Meraz, and on May 6, 2005, the USCIS filed the Notice to Appear with the immigration court. On June 7, 2005, Meraz appeared before Immigration Judge Craig Zerbe, who scheduled a hearing for March 29, 2007. Meraz alleges that Judge Zerbe has stated he would consider a motion to terminate the removal proceedings if Meraz can establish prima facie eligibility for naturalization in this proceeding.

---

approximately 5 years prior to that date. *See* 8 U.S.C. § 1101(a)(13)(A) ("The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.").

**II. Discussion**

    A.    <u>Motion to Dismiss for Lack of Jurisdiction</u>

When reviewing a motion to dismiss brought under Rule 12(b)(1), this court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel,* 66 F.3d 894, 897 (7th Cir. 1995). For the purpose of determining subject matter jurisdiction, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* The burden of proof in a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.,* 322 F.3d 942, 946 (7th Cir. 2003).

Neither party disputes that this court had jurisdiction to hear this case when it was filed. Title 8 U.S.C. § 1447(b) states:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

The USCIS conducted its examination of Meraz on September 20, 2004 and had not made a decision on his application for naturalization when Meraz filed this suit on February 23, 2005, more than 120 days after his examination. The issue before the court is whether the events that unfolded after this suit was filed have stripped this court of jurisdiction to hear the case.

        *1.*    *Effect of the USCIS's Denial of Meraz's Naturalization Application*

After Meraz filed this suit, on March 30, 2005, the USCIS purported to deny Meraz's

4

naturalization application. Although the USCIS has not directly argued that its denial of Meraz's application affects this court's jurisdiction, the USCIS makes much of the fact that it decided Meraz's application in 190 days and that this court did not order it to cease action on the application. USCIS's Reply Memorandum, at 2. This assertion begs the question of whether the USCIS had jurisdiction to decide Meraz's naturalization application when it did.

Although the Seventh Circuit has yet to rule on this issue, in *United States v. Hovsepian*, the Ninth Circuit sitting *en banc* held that when a plaintiff files a case in the district court under 8 U.S.C. § 1447(b), the district court has exclusive jurisdiction to decide the naturalization application; thereafter, the USCIS is without jurisdiction and may no longer decide the application. *U.S. v. Hovsepian*, 359 F.3d 1144, 1164 (9th Cir. 2004) (en banc); *see also Zaranska v. U.S. Dep't of Homeland Security*, No. 04-0169, 2005 WL 2033468, at *2 (E.D.N.Y. July 18, 2005); *Castracani v. Chertoff*, 377 F. Supp. 2d 71, 73 (D.D.C. 2005). The Ninth Circuit in *Hovsepian* conducted a thorough review of the language of the statute, the overall statutory scheme, and Congressional purposes behind its enactment.[4] This court agrees with its careful

---

[4]In examining the language of the statute, the court held that, since Congress gave the district court the power to "determine the matter" under § 1447(b), Congress did not intend for the USCIS to retain jurisdiction to decide the naturalization application. *Id.* at 1160. Additionally, since the statute allows the court to "remand the matter, with appropriate instructions," the statute creates "a hierarchical result that is more consistent with exclusive jurisdiction than concurrent jurisdiction." *Id.* at 1161.

In examining the statutory context, the court held that, in light of the fact that 8 U.S.C. § 1421(c) allows the applicant to seek de novo review from the district court of a denial of a naturalization application, "§ 1447(b) is best viewed as a mechanism by which naturalization applicants who are impatient with INS delay may skip the agency's analysis of their application and proceed directly to the step in which the district court conducts a de novo review of the application." *Id.* at 1162. The court noted that, if the USCIS retained concurrent jurisdiction, "a judicially uneconomical procedure" would result where an applicant would file with the district court under § 1447(b); the INS would deny the application; and the applicant would then file a new action under § 1421(c). *Id.* at 1163.

analysis.

Thus, this court had exclusive jurisdiction to decide Meraz's naturalization application from the time Meraz filed this suit. The court rejects USCIS' contention that because this court did not order the agency to cease action on the application, it did not intend to exercise jurisdiction over this case. Nothing in the statute requires this court to state affirmatively that it intends to assert jurisdiction or issue an order instructing the USCIS not to decide the case. Rather, the statute confers jurisdiction on this court and prevents the USCIS from exercising jurisdiction once the applicant has filed an action in the district court.

Thus, although the USCIS purported to deny Meraz's application on March 30, 2005, the USCIS no longer had jurisdiction over Meraz's application.[5] The USCIS's denial was ineffective, and this court retains jurisdiction to decide Meraz's naturalization application.

---

The court also held that Congress' policy objectives in enacting the Immigration Act of 1990 (which included reducing the waiting time for naturalization applicants, streamlining the naturalization application process, maintaining consistency and fairness of naturalization decisions, and allowing naturalization applicants to choose which forum would adjudicate their applications) favored a finding of exclusive jurisdiction. *Id.* at 1163-64 (citing H.R. Rep. No. 101-187 (1989)).

[5]The court notes that the USCIS based its denial of Meraz's application on a prior conviction that occurred outside the statutory period of the five years preceding his naturalization application. Under 8 U.S.C. § 1427(a), a person seeking naturalization is required to show good moral character during the five years preceding his naturalization application. While 8 U.S.C. § 1427(e) states that the USCIS can "take into consideration . . . the applicant's conduct and acts at any time prior to [the five year period]," some courts have held that "if the applicant demonstrates exemplary conduct during the specified statutory period, 'then his application cannot be denied based <u>solely</u> on his prior criminal record.'" *U.S. v. Hovsepian*, 422 F.3d 883, 886 (9th Cir. 2005) (en banc) (quoting *Santamaria-Ames v. INS*, 104 F.3d 1127, 1132 (9th Cir. 1996)) (emphasis added). That appears to be precisely what occurred here.

## 2. *Effect of Initiation of Removal Proceedings*

Although this court retains jurisdiction despite the USCIS's denial of Meraz's application, the USCIS argues that the initiation of removal proceedings strips this court of jurisdiction under 8 U.S.C. § 1429.[6] In evaluating this argument, a brief review of the history of § 1429 is required.

Before the enactment of § 1429 in 1952, the practice was "for both the deportation and naturalization processes to proceed along together until either petitioner's deportation or naturalization *ipso facto* terminated the possibility of the other occurring." *Shomberg v. U.S.*, 348 U.S. 540, 543 (1955). Section 1429 was enacted to end the "race between the alien to gain citizenship and the Attorney General to deport him." *Id.* at 544. Courts have stated that the purpose of § 1429 is to give priority to removal proceedings over pending naturalization applications. *See, e.g., Zayed v. U.S.*, 368 F.3d 902, 905 (6th Cir. 2004).

Additionally, the responsibilities for deciding naturalization applications have changed over time. Until 1990, district courts had exclusive jurisdiction to naturalize aliens as citizens. 8 U.S.C. § 1421 (amended 1990). At that time, 8 U.S.C. § 1429 read: "[N]o application for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a removal proceeding pursuant to a warrant of arrest." 8 U.S.C. § 1429 (amended 1990). As a result, district courts sitting as naturalization courts lacked subject matter jurisdiction

---

[6]The current version of 8 U.S.C. § 1429 states: "[N]o person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act; and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act."

7

to consider naturalization applications when removal proceedings were pending. *See, e.g., Petition of Terzich,* 256 F.2d 197, 200 (3d Cir. 1958).

In 1990, Congress passed the Immigration Act of 1990. Pub. L. No. 101-649 (1990). Congress took from district courts the power to naturalize and conferred this authority on the Attorney General. 8 U.S.C. § 1421(a) ("The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General."). Congress also amended § 1429 to replace "naturalization court" with "Attorney General."

Thus, under the post-1990 statutory scheme, a naturalization application can reach the district court in one of two ways: (1) under 8 U.S.C. § 1421(c), a person whose naturalization application has been denied can seek de novo review of the denial in the district court; or (2) under 8 U.S.C. § 1447(b), a person can seek to have the district court decide the naturalization application in the first instance (or remand with instructions) if the Attorney General has not acted within 120 days after the examination. In this case, Meraz brought suit under § 1447(b), and the USCIS subsequently instituted removal proceedings.

The relevant portion of Section 1429 now states:

> [N]o person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act; and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act.

8 U.S.C. § 1429. In this case, a removal proceeding is pending against Meraz.[7] The plain

---

[7]The court notes that, although Meraz was originally served with a Notice to Appear in December 2002, a Notice to Appear was not filed with the immigration court until May 6, 2005. Removal proceedings do not commence when a charging document is served on the alien. *DeLeon-Holguin v. Ashcroft,* 253 F.3d 811, 815 (5th Cir. 2001). "[A] removal proceeding does

8

language of § 1429 would prevent the Attorney General, and thus the USCIS, from considering Meraz's naturalization application.

Nothing in the statute indicates that Congress intended to deprive this court of jurisdiction once removal proceedings have commenced. Rather, the court retains jurisdiction, although the power of the court to grant relief may be diminished while removal proceedings are pending. Although the Seventh Circuit has not yet ruled on this issue, the court notes that this holding comports with the plain language of the statute and with the majority of courts which have decided this issue in cases arising under either § 1447(b), as in this case, or § 1421(c). *Zayed v. U.S.*, 368 F.3d 902, 906 (6th Cir. 2004); *De Lara Bellajaro v. Schiltgen*, 378 F.3d 1042, 1046 (9th Cir. 2004); *Farghaly v. Frazier*, No. 05-1045, 2005 WL 3357070, at *2 (D. Minn. Dec. 9, 2005); *Ibrahim v. Dep't of Homeland Security*, No. 05 C 139, slip op. at 3 (S.D. Tex. Nov. 4, 2005); *Angel v. Ridge*, No. 2004 C 4121, 2005 WL 1263143, at *4-5 (S.D. Ill. May 25, 2005); *Dominguez v. Ashcroft*, No. 04-1030-JE, 2004 WL 2632916, at *1 (D. Or. Nov. 18, 2004); *Zhai v. United States Citizenship & Immigration Services*, No. 04-0360, 2004 WL 1960195, at *4 (N.D. Cal. Sept. 3, 2004); *Saad v. Barrows*, No. 03 C 1342, 2004 WL 1359165, at *5 (N.D. Tex. June 14, 2004); *Grewal v. Ashcroft*, 301 F. Supp. 2d 692, 697 (N.D. Ohio 2004); *Ngwana v. Attorney General of the United States*, 40 F. Supp. 2d 319, 321 (D. Md. 1999); *Gatcliffe v. Reno*, 23 F. Supp. 2d 581, 582-83 (D.V.I. 1998); *but see Ogunfuye v. Acosta*, No. H-05-0551, 2005 WL 1607034, at *2-3 (S.D. Tex. July 1, 2005) (holding that § 1447(b) did not

---

not 'commence' against an alien until the INS actually files a Notice to Appear with the immigration court." *Hovsepian*, 359 F.3d at 1165 (citing *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 600 (9th Cir. 2002). "[L]ogically, a removal proceeding cannot be 'pending' before it has 'commenced.'" *Id.* Therefore, in this case, removal proceedings were not pending against Meraz until May 6, 2005 when the charging document was filed with the immigration court.

9

apply because no examination was ever conducted, but even if it did apply, the court would not have jurisdiction in light of the pending removal proceedings); *Mosleh v. Strapp*, 992 F. Supp. 874, 876 (N.D. Tex. 1998). The motion to dismiss under Rule 12(b)(1) is denied.

B.      Motion to Dismiss under Rule 12(b)(6)

Alternatively, the USCIS argues that this court should dismiss the complaint under Fed. R. Civ. P. 12(b)(6) because this court cannot grant any meaningful relief while removal proceedings against Meraz are pending. In reviewing a motion to dismiss for failure to state a claim, the court reviews all facts alleged in the complaint and any reasonable inferences drawn from those facts in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). The court will grant the motion only if it appears that the plaintiff cannot prove any set of facts that would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

The USCIS argues that § 1429 precludes this court from considering the merits of Meraz's naturalization application during the pendency of the removal proceedings. As discussed above, however, the court still has jurisdiction over this case, and no effective action has yet been taken on his naturalization application. At most, the USCIS is entitled to a stay which would be lifted if the immigration judge terminates the removal proceedings[8] or Meraz otherwise prevails in the proceedings. The motion to dismiss under Rule 12(b)(6) is denied.

The parties' briefs focused almost entirely on the jurisdictional question. They paid

---

[8]Under 8 C.F.R. § 1239.2(f), "[a]n immigration judge may terminate removal proceedings to permit the alien to proceed to a final hearing on a pending application or petition for naturalization when the alien has established prima facie eligibility for naturalization and the matter involves exceptionally appealing or humanitarian factors."

relatively little attention to the relief, if any, that is available to Meraz during the pendency of his removal proceedings. Within 28 days of the date of this order, Meraz shall file a brief detailing the relief he seeks in light of the pending removal proceedings, and his basis for asserting that the court can grant such relief at this time. The USCIS shall have 14 days to respond, and Meraz shall have 14 days to reply. If Meraz does not file additional briefing, the court shall enter a stay until such time as the removal proceedings are concluded.

## III. Conclusion

For the foregoing reasons, the motion to dismiss is denied.


ENTER:

____/s/_____

Joan B. Gottschall
United States District Judge

Dated: March 9, 2006